## MARY BUCHTELLA V. FRANK STEPANEK.

1. FRAUD—*Division of Proceeds—No Cause of Action.* A fraudulent transaction, in which both parties have knowingly participated, will neither support a cause of action in favor of the plaintiff, nor a counterclaim or judgment for affirmative relief in favor of the defendant.

2. RELIEF, *Refused.* Where parties purposely engage with equal guilt in illegal, immoral or fraudulent dealings, the court leaves them where it finds them, and will not lend its aid to either party.

*Error from Republic District Court.*

THE nature of the action and the material facts are set forth in the opinion herein, filed May 5, 1894.

*T. M. Noble*, for plaintiff in error.

*N. T. Van Natta*, and *Jay F. Close*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: The plaintiff in error brought this action in the district court of Republic county, for partition of 480 acres of land in that county, of which she alleged she was the owner of one-half. The land was a part of the estate of her father, Wencel Stepanek, and the defendant, Frank Stepanek, is her brother. Wencel Stepanek died, leaving a widow and these two children as his only heirs. He made a will, by which he gave his widow the household furniture, $700, the use for life of some lots in Marion, Linn county, Iowa, and the residue of the property, except the Marion lots, which were given in remainder, after the life estate of the widow, to the plaintiff's children, was to be divided equally between the plaintiff and defendant, Frank. The defendant denied the plaintiff's right to any part of the land. It was shown on the trial that the widow refused to take under the will, and on her application a half of the land in Republic county was set apart for her by commissioners appointed by the probate court. The widow was Wencel Stepanek's second wife, Mary

and Frank being children by the decedent's first wife. At the time of Stepanek's death there was due him on a note and mortgage held for collection by an attorney at Marion, Iowa, $1,000 and interest. The widow had no knowledge of this mortgage, and it was not mentioned in the will. Frank Stepanek, in order to defraud the widow, very soon after his father's death wrote the following order and sent it to the plaintiff:

"NEW TABOR, Republic Co., Kas., Jan. 18, 1882.
"*Mr. J. Davis, Attorney at Law, Iowa:*
"DEAR SIR—If you did collect any money on the mortgage which I sent you for collection against F. Valanta, my will is for you to pay the full amount, $1,072.66, except your fee, to my daughter, now Mary Buchtella, living in Marion, Linn county, Iowa, or turn over the papers in her possession, and oblige,        Yours, etc.,      WENCEL STEPANEK."

The name Wencel Stepanek was signed to this order by Frank Stepanek, after his father's death, without any previous direction from his father to write any such order, and the court finds that it was executed for the purpose of defrauding the widow. The order was presented by the plaintiff, and Davis, the attorney, paid over the net amount in his hands, to wit, $972, to her. Afterward, Frank, as administrator of his father's estate, filed in the probate court of Republic county a petition for the sale of the real estate for the payment of debts, and in the list of liabilities, for the payment of which he claimed such sale was necessary, he included "Note in favor of Mary Buchtella, bearing interest, 8 per cent., $1,500." There was no such note and no such indebtedness, but it was fraudulently inserted by Frank for the purpose of deceiving the widow, and inducing her to believe that the indebtedness of the estate was larger than it really was. On this petition an order was obtained, and 160 acres of the land were sold. On her application for the allotment of her share of the real estate, 182 acres were set off to the widow, leaving only 138 acres, the title to which was vested in Mary and Frank. Frank solicited the plaintiff to use the

money in her hands to purchase the lands allotted to the widow, for their joint benefit, but this she refused to do, and he thereupon borrowed the money and bought the 182 acres for $700, which was considerably less than its value, thereby in effect giving to the widow the amount named in the will for her interest. The plaintiff claimed that she should have one-half of this land, as well as of the remaining 138 acres. The defendant, Frank, contends that he should retain all of the lands purchased from the widow as his own, and should have one-half of the remaining lands, and also one-half of the money received by the plaintiff under the forged order. The court, after finding the facts as above stated, though considerably more in detail, found, as a conclusion of law, that the title of the purchaser at the administrator's sale was good, and in favor of Frank's contention, both as to the land he bought of the widow and the money, and directed partition of the remaining 138 acres, charged, however, with the payment to Frank of $480.

Two claims are made by the plaintiff in error: (1) That the part of the land set off to the widow is chargeable with a share of the debts really due from the estate, which the court finds amounted to about $700; and that, even if Frank's purchase from her be sustained, the land is still chargeable with a share of the debts. (2) Error in giving Frank judgment for $480, and making it a charge against the land. The plaintiff and defendant conspired to defraud the widow of all benefit to be derived from the money received by the plaintiff. If it had been paid over and accounted for by the administrator, as it should have been, there would have been no need of a sale of any part of the land to pay debts, and the widow would have been entitled to her full half of the 480 acres. While it does not clearly appear in the record that the plaintiff filed any claim for $1,500 against the estate, her fraud in obtaining and concealing the money was sufficient to prevent her taking from the widow any of the lands set apart to her, and she is in no better position after they have been conveyed to her brother. But the court seems to have con-

cluded that Frank may not only retain the benefit of his fraudulent dealings by keeping the land deeded to him by the widow, but that he may compel the plaintiff to pay over to him one-half the money she collected on the order he forged.

1. Fraud—division of proceeds —no cause of action. This was error. The courts never assist a party in the perpetration of frauds, nor do they come in and divide the proceeds of such transactions equally between the parties jointly guilty. The defendant forged the order, the plaintiff used it, got the money, and refuses to divide with him. Where persons

2. Relief, refused. engage in an illegal and fraudulent transaction, the court will leave them where it finds them. (*Brake v. Ballou,* 19 Kas. 397; *Jarvis v. Campbell,* 23 id. 370; *Mellison v. Allen,* 30 id. 382; *Sheldon v. Pruessner,* 52 id. 579.)

The 138 acres remaining unsold were properly subject to partition in this action. The two children of Wencel Stepanek derived title to the same by inheritance from their father, untainted by any fraudulent transaction. There was nothing, therefore, to prevent the plaintiff from maintaining her action for the partition of so much of the estate.

The judgment is affirmed as to all matters except that part providing for the payment to Frank Stepanek of the sum of $480 out of the remaining lands. The judgment will be modified by striking out the provisions for the payment of any sum to Frank Stepanek on account of moneys received by the plaintiff, without disturbing the order for partition of the 138 acres between the parties in equal parts.

All the Justices concurring.