IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,710

In the Matter of the Parentage of E.A., a Minor Child.

No. 125,994

In the Matter of the Adoption of E.A., a Minor Child.

SYLLABUS BY THE COURT

1.

Appellate jurisdiction is defined by statute; the right to appeal is neither a vested nor a constitutional right. Whether appellate jurisdiction exists is a question of statutory interpretation over which an appellate court has unlimited review.

2.

When reviewing a district court's decision denying a party's standing at the pleading stage, an appellate court must accept the facts alleged in the pleadings as true, along with any inferences reasonably drawn therefrom. If those facts and inferences demonstrate the party has standing, the district court must be reversed.

Review of the judgments of the Court of Appeals in 62 Kan. App. 2d 507, 518 P.3d 419 (2022), and an unpublished opinion filed April 5, 2024. Appeals from Shawnee District Court; EVELYN WILSON. RACHEL L. PICKERING, and MERYL D. WILSON, judges. Oral argument held October 29, 2024. Opinion filed December 27, 2024. Judgment of the Court of Appeals in No. 123,710 affirming the district court is reversed. Judgment of the district court in that case is reversed and the case is remanded with directions. Judgment of the Court of Appeals in No. 125,994 reversing the district court is affirmed. Judgment of the district court in that case is reversed, the adoption decree is vacated, and the case is remanded with directions.

1

*Joseph W. Booth*, of Lenexa, argued the cause and was on the briefs for appellant D.A.

*Rebekah A. Phelps-Davis*, of Phelps-Chartered, of Topeka, argued the cause and was on the briefs for appellees D.P. and S.P.; *Allan A. Hazlett*, of Topeka Family Law, of Topeka, was on the briefs for appellees C.A., D.P., and S.P.; and *Martin W. Bauer*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, was on the briefs for appellees D.P. and S.P.

*Linus L. Baker*, of Stilwell, was on the brief for amicus curiae The National Association for Grandparenting in No. 123,710.

*Lindsee A. Acton* and *Warren H. Scherich III*, of Scherich Family Law, PC, of Shawnee, were on the brief for amicus curiae National Association of Social Workers in No. 123,710.

The opinion of the court was delivered by

BILES, J.: These consolidated cases arise from a prolonged legal battle between divorced paternal grandparents who each want to adopt their grandson. The boy lived exclusively with grandfather for his first six years until 2019, when grandmother and her husband launched a preemptive adoption proceeding under false pretenses by taking the boy as part of an arranged visitation. He never returned. Grandfather tried intervening in the adoption, but the court denied him "party in interest" status under K.S.A. 2018 Supp. 59-2112(h). He also initiated an unsuccessful paternity case, alleging he was the boy's presumed "father" under the Kansas Parentage Act. See K.S.A. 23-2208(a)(4) ("A man is presumed to be the father of a child if . . . [t]he man notoriously or in writing recognizes paternity of the child."). The adoption court issued its decree 25 days after the case began, awarding the boy to grandmother and her husband. Three years later, the adoption court issued a final order in which it reconsidered grandfather's motion to intervene and again denied it.

2

Grandfather separately appealed both district court rulings with partial success. One Court of Appeals panel denied him relief in *In re Parentage of E.A.*, 62 Kan. App. 2d 507, 509, 518 P.3d 419 (2022). But another Court of Appeals panel held in his favor, reversing the adoption court. *In re Adoption of E.A.*, No. 125,994, 2024 WL 1476802, at *1 (Kan. App. 2024) (unpublished opinion) ("Because we find the court's holding contrary to justice and our traditional notions of fair play, we reverse and remand with directions to the court to allow the grandfather to present his case to the court as an interested party."). The losing sides asked for our review in each case.

We reverse the parentage panel and affirm the adoption panel—meaning both district court judgments must be reversed. We hold grandfather pled sufficient facts to advance a colorable party-in-interest claim in the adoption proceeding under K.S.A. 2023 Supp. 59-2112(h)(1) (parent), (h)(2) (prospective adoptive parent), (h)(3) (adoptive parent), and (h)(4) (legal guardian). Likewise, he pled sufficient facts under K.S.A. 23-2208(a)(4) (notorious recognition) to prosecute his parentage claim. Either way, grandfather should have been allowed to intervene in the adoption case, so the competing interests could be adequately addressed. See K.S.A. 2023 Supp. 59-2136(h)(1) ("When a father or alleged father appears and claims parental rights, the [adoption] court shall determine parentage . . . ."); K.S.A. 23-2210(a) (parentage case may be joined with an adoption proceeding). As the adoption panel succinctly put it,

> "When there is much love, there can be much struggle. This adoption case is an example. The appearance of this case to an observer could lead to the conclusion that Grandmother simply won the race to the courthouse and snatched her grandson away from Grandfather. Claims of six years of custody should not be ignored when deciding the propriety of an adoption." *In re Adoption of E.A.*, 2024 WL 1476802, at *11.

3

Like the adoption panel, we underscore that we are not deciding who has the better case on the merits. This is a dispute that should be properly resolved by the district court. See 2024 WL 1476802, at *1 ("[We] are simply ruling that the grandfather should be afforded an opportunity to present his case.").

We remand the parentage case to the district court with directions that it be consolidated with the adoption case, which is also remanded for further proceedings consistent with this opinion. We vacate the adoption decree and direct that the adoption case return to its status on May 31, 2019, when the adoption court placed the boy in the temporary custody of grandmother and her husband. We do this with the understanding that temporary custody may be subject to reconsideration after remand to determine what is in the boy's best interests given the passage of time and in accordance with K.S.A. 59-2131 and K.S.A. 2023 Supp. 59-2132. See *In re Adoption of Baby Girl P.*, 291 Kan. 424, 436-37, 242 P.3d 1168 (2010) (directing court to carefully consider potential distress from child's custody transitions). We enter these orders "fully aware that painful challenges and traumas lie ahead for those involved." *In re Adoption of C.L.*, 308 Kan. 1268, 1269, 427 P.3d 951 (2018).

FACTUAL AND PROCEDURAL BACKGROUND

E.A. was born to an unmarried couple in December 2012. When he was seven months old, his birth parents—C.A. and J.B.—permitted his paternal grandfather, D.A., to take physical custody and raise the boy as his own child. In October 2013, grandfather arranged for a court to declare C.A. to be the biological father and J.B. to be the biological mother. The court also granted C.A. temporary sole custody with supervised visitation for the mother.

4

In January 2014, the biological father signed a document entitled "Custody Relinquishment" agreeing he was transferring E.A.'s physical custody to grandfather and granting grandfather sole responsibility to make medical, educational, financial, and "any other type of decisions" in the boy's best interests.

In August 2018, E.A.'s biological father signed a "Consent to Adoption of Minor Child," in which he agreed to "permanently" give up "all custody and other parental rights" over E.A. and consented to the boy's adoption by grandfather. But this document was never filed with any court and effectively expired after six months. See K.S.A. 2023 Supp. 59-2114(b). Mother was not a party to this consent or the custody relinquishment.

From August 2013 to May 2019, the boy lived continuously and exclusively with grandfather and his family. He was integrated as a household member, which included a mother and three siblings. Throughout this time, E.A. knew grandfather as his father. The boy was widely known by friends, neighbors, teachers, and acquaintances as the family's youngest child. The biological mother had no contact with the boy and provided no support. The biological father had only incidental contact with E.A., as a sort of older brother, but not as a parent.

Everything changed on May 31, 2019, when paternal grandmother, S.P., and her husband, D.P., asked for visitation with E.A. and did not bring him back. Unbeknownst to grandfather, they had filed the week before a petition in Shawnee County District Court to adopt E.A., terminate the biological parents' rights, and place the boy in their temporary custody. Their pleadings included signed consents by E.A.'s biological parents to this adoption. The petition falsely asserted the boy had been living with grandmother and her husband for "the past five years." See K.S.A. 2023 Supp. 59-2128(a)(4) (requiring petitioners to provide a sworn account of the child's residence over the last five

5

years). The adoption court placed E.A. in their temporary custody on May 31, and they cut off all contact with grandfather's family.

When he learned of this because of K.S.A. 2023 Supp. 59-2133(b) (mandating notice of adoption proceedings to "any person who has physical custody of the child"), grandfather filed multiple motions to stop what was happening. On June 4, he tried to set aside the temporary custody order and requested an emergency hearing. On June 5, he moved to confirm what he described as his existing de facto custody of E.A. On June 6, he filed a cross-petition in the adoption case to establish his parentage of E.A. and object to S.P. and D.P.'s third-party adoption. On June 13, he sought to intervene as a party in interest in the adoption case. On that same date, he commenced a separate paternity action in Shawnee County District Court, alleging he was E.A.'s presumed father for purposes of the Kansas Parentage Act, K.S.A. 23-2201 et seq. See K.S.A. 23-2208(a)(4) ("A man is presumed to be the father of a child if . . . [t]he man notoriously or in writing recognizes paternity of the child.").

On June 17, the adoption court denied grandfather's petition to intervene. It reasoned the biological father's paternity was already established, and that the biological father's previous consent to have grandfather adopt E.A. had expired under K.S.A. 2018 Supp. 59-2114(b). It also noted K.S.A. 2018 Supp. 59-2112(h) specifies who qualifies as a "party in interest" in adoption proceedings, and that it does not list grandparents. The court found grandfather lacked statutory standing and denied his petition to intervene. Later that day, it issued another order denying all other pending motions and petitions.

The following day, June 18, the adoption court issued an adoption decree favoring grandmother and her husband and terminating the biological parents' parental rights. On June 21, grandfather asked the court to reconsider those rulings, moved to stay the adoption, or, alternatively, gave notice of appeal. In this filing, he expressed frustration

6

with the adoption court's "huge rush" to proceed. Those motions, however, languished on the court's docket until July 2022 when the adoption court denied them and entered a final adoption order.

Meanwhile, the separate parentage action moved ahead. Grandfather argued he had established a parental relationship and legal custody with E.A. through the biological father's consent and the biological mother's acquiescence. Grandfather admitted he was not the biological father but claimed the child regarded him as his father. From all that, grandfather contended he should be presumed to be E.A.'s father under K.S.A. 23-2208(a)(4) (notorious recognition of paternity). He also claimed the biological parents were unfit, even though he had never formally pursued terminating their parental rights under the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq. Finally, grandfather conceded "the natural parents were still the legal parents" when he filed the parentage action.

The parties both moved for summary judgment, and the parentage court held a hearing in August 2020. The court asked if the adoption had been finalized, and grandfather's attorney confirmed it had not because the reconsideration motion remained pending. Nevertheless, the court did not consolidate the two cases, nor did either party request consolidation. See K.S.A. 23-2210(a) (allowing a parentage action to "be joined with" an adoption action).

In its written ruling denying grandfather relief, the parentage court noted grandmother and her husband did not dispute grandfather's factual assertions, including that E.A. had lived continuously and exclusively with the grandfather's family and that the boy believed grandfather was his father. Even so, the court dismissed the paternity petition for three reasons. First, it held grandfather lacked statutory standing in the adoption case under K.S.A. 2020 Supp. 59-2112(h). Second, collateral estoppel, res

7

judicata, and the law-of-the-case doctrine prevented grandfather from "getting a second bite at the same apple" because of the adoption court's earlier rulings in June 2019. Third, it held that no presumptive parentage could exist under the Parentage Act when legal parentage had already been established in the adoption case.

Grandfather appealed the parentage court's ruling while the adoption case remained stuck in district court.

*The Parentage Case Appeal*

The parentage panel affirmed the parentage court's outcome but for different reasons. It held the lower court should not have based its denial of grandfather's claims on preclusion doctrines but on the reasoning from *In re M.F.*, 312 Kan. 322, 475 P.3d 642 (2020), in which a nonbiological mother sought to establish maternity of her former same-sex partner's child under K.S.A. 2019 Supp. 23-2208(a)(4). The *M.F.* court remanded to consider evidence of when exactly the birth mother allegedly consented to sharing parental rights. See *In re M.F.*, 312 Kan. at 323 ("We rule that such a partner can be recognized as a legal parent through use of K.S.A. 2019 Supp. 23-2208[a][4] when the birth mother has consented to shared parenting at the time of the child's birth.").

The panel majority applied *M.F.*'s timing factor to uphold dismissing grandfather's parentage case, because he "did not claim paternity at the time of the boy's birth" but only did so months later. *In re Parentage of E.A.*, 62 Kan. App. 2d at 509. The majority then summarized its thoughts, expressing empathy for the case's outcome under the facts:

> "We hold that Grandfather is not entitled to summary judgment and the district court was correct to dismiss the case because he has failed to show the timeliness of his 'notoriously or in writing' acknowledgment of his paternity of E.A.

"Turning to his claims of paternity, we are struck by the number of years that Grandfather has fulfilled the role of parent for E.A. and the suddenness of Grandmother's and D.P.'s taking the child, denying Grandfather access to the boy, and then quickly filing for adoption. We have no insight into the reasoning of the adoption court because of our very limited record. Had these facts been presented, would they have made any difference in the adoption court's ruling? We do not know.

"But we do know that Grandfather had several years to adopt this child and did not. The consent to adopt that he had from E.A.'s father expired after six months. Given the facts here, the birth parents—the only two who could consent to an adoption—could have consented to Grandfather's adoption of their son earlier. But the fact remains, they did consent to Grandmother's and D.P.'s desire to adopt.

"We recognize that fact patterns similar to these will arise again, given the nature of human relationships. The only reasonable way to litigate these issues, given the nature of the Parentage Act and the Adoption and Relinquishment Act, is for them to be decided in the same action. We hold that the proper action must be brought under an adoption case." *In re Parentage of E.A.*, 62 Kan. App. 2d at 526-27.

Judge Gordon Atcheson concurred in the result, pointedly observing "this case is a something of a procedural mess." 62 Kan. App. 2d at 528 (Atcheson, J., concurring). He criticized the panel majority for what he saw as an "unwarranted expansion" of *M.F.* and noted two reasons why grandfather's statutory paternity presumption failed. 62 Kan. App. 2d at 530. First, he said the record plainly established grandfather was not E.A.'s biological parent and, to his detriment, grandfather never initiated adoption proceedings himself. Second, even if grandfather established a parentage presumption, it was rebutted by the 2013 journal entry declaring grandfather's son to be the boy's biological father. 62 Kan. App. 2d at 533-34.

Grandfather requested our review of the parentage panel's decision, raising two questions:  Whether the panel erred in applying the holding from *In re M.F.*, 312 Kan.

9

322, Syl. ¶ 5 (introducing a timing requirement for the notorious recognition of parentage under K.S.A. 2019 Supp. 23-2208[a][4] in the context of same-sex parents); and whether his status as de facto parent should allow him to intervene in the adoption proceeding. We granted review but delayed our consideration pending decisions in the still lingering adoption case.

*The Resumed Adoption Case and Its Appeal*

After a three-year dormancy it attributed to a mistake, the adoption court finally took up in 2022 grandfather's 2019 reconsideration motion and rejected it. The court found consideration of his arguments at this time "would create an unnecessary controversy" and reaffirmed the earlier ruling that grandfather lacked standing. In doing so, the court primarily relied on K.S.A. 2022 Supp. 59-2112(h), which defines a "party in interest," and K.S.A. 2022 Supp. 59-2134(a), which directs the court to consider evidence "offered by any party in interest." The court also found the birth parents were the judicially determined biological parents, emphasizing Kansas law recognizes only two parents.

Grandfather filed another notice of appeal in the adoption case, contending his earlier 2019 notice of appeal should have been effective once the court issued its final order in 2022, citing Supreme Court Rule 2.03(a) (2022 Kan. S. Ct. R. at 15) (providing a premature notice of appeal ripens into a valid notice of appeal once "the actual entry of judgment" is filed). The adoption panel exercised appellate jurisdiction over grandmother and her husband's objection. *In re Adoption of E.A.*, 2024 WL 1476802, at *4.

The adoption panel then reversed the district court, vacated the decree, and remanded the case for another hearing on the adoption after granting grandfather interested party status under K.S.A. 2023 Supp. 59-2401a(e)(8) (giving the court the legal

10

authority to grant party "interested party status"). It also directed the district court to allow grandfather a chance on remand to present evidence supporting his paternity claim. Finally, it instructed the court "to make further inquiry on whether there was a fraud committed here." 2024 WL 1476802, at *11. Its decision is best understood by this passage:

> "While the statutory analysis may not fall in Grandfather's favor, the idea that an adoption court *could not* hear from a person with relevant evidence if the child's best interests were in question has the potential to lead to absurd results. We presume the Legislature does not intend absurd or unreasonable results. *In re M.F.*, 312 Kan. at 351. The district court's decision that K.S.A. 2018 Supp. 59-2134(a) was written to purposely preclude presentation of relevant evidence in all adoption cases is an absurd result and cannot be the intent of the Legislature. We do not interpret the statute to mean that all grandparents can intervene in their grandchild's adoption. These cases are fact driven." 2024 WL 1476802, at *9.

Grandmother and her husband petitioned this court for review of the adoption panel's decision reversing their adoption decree, arguing the panel ignored the statutory definition of "party in interest" provided in K.S.A. 2023 Supp. 59-2112(h). We granted review and consolidated this case with the parentage case.

We have jurisdiction over both appeals. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 2023 Supp. 60-2101(b) (providing Supreme Court has jurisdiction "to correct, modify, vacate or reverse any act, order or judgment of a district court or court of appeals" to ensure it is "just, legal and free of abuse").

11

Despite having previously objected to the panel's appellate jurisdiction under K.S.A. 2023 Supp. 59-2401a, grandmother and her husband do not contest it now. Still, we have an obligation to ensure our jurisdiction, so we consider first whether grandfather has standing to appeal the adoption action. See *Kaelter v. Sokol*, 301 Kan. 247, Syl. ¶ 1, 340 P.3d 1210 (2015). We hold we have jurisdiction.

*Standard of Review*

In Kansas, appellate jurisdiction is defined by statute. Kan. Const. art. 3, § 3 ("The supreme court shall have . . . such appellate jurisdiction as may be provided by law."); *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010) ("Appellate jurisdiction is defined by statute; the right to appeal is neither a vested nor a constitutional right."). As such, appellate courts only exercise jurisdiction in circumstances the Legislature permits; they do not have discretionary power to hear appeals from all district court orders. *Svaty*, 291 Kan. at 609-10.

In adoption appeals, two statutes are relevant to jurisdiction. K.S.A. 60-2101 governs generally, and K.S.A. 2023 Supp. 59-2401a applies specifically to adoptions. Here, the key issue is whether K.S.A. 2023 Supp. 59-2401a allows grandfather to challenge the adoption court's ruling, which denied him standing. Answering that question requires statutory interpretation, so our review is unlimited. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018).

*Discussion*

K.S.A. 2023 Supp. 59-2401a sets the rules for appealing adoption cases. The relevant provisions are:

12

"(b) An appeal by *an interested party* from a district judge . . . to an appellate court shall be taken pursuant to article 21 of chapter 60 of the Kansas Statutes Annotated, and amendments thereto, *from any final order, judgment or decree* entered in any proceeding pursuant to:

(1) *The Kansas adoption and relinquishment act*, K.S.A. 59-2111 et seq., and amendments thereto;

. . . .

"(e) As used in this section, '*interested party*' means:

(1) *The parent* in a proceeding pursuant to the Kansas adoption and relinquishment act, K.S.A. 59-2111 et seq., and amendments thereto;

. . . .

(7) *the petitioner* in the case on appeal; and

(8) *any other person granted interested party status* by the court from which the appeal is being taken." (Emphases added.) K.S.A. 2023 Supp. 59-2401a.

Before the panel, grandmother and her husband argued grandfather lacked statutory standing to appeal the adoption case because he was not E.A.'s parent or the petitioner in the adoption action, nor was he granted interested party status by the court. Grandfather countered, arguing he could not be barred from appealing denial of his standing merely because the adoption court determined he lacked it. He urged the adoption panel to ignore this circular reasoning and exercise *parens patriae* authority based on the case's extraordinary circumstances, citing *In re M.M.L.*, 258 Kan. 254, 264, 900 P.2d 813 (1995).

13

The adoption panel accepted grandfather's invitation to exercise *parens patriae* authority, relying on *Frazier v. Goudschaal*, 296 Kan. 730, 747, 295 P.3d 542 (2013) (upholding jurisdiction on various grounds, including Kansas courts' "*parens patriae* function of protecting our children"). *In re Adoption of E.A.*, 2024 WL 1476802, at *7. But doing so was both unnecessary and wrong. It was unnecessary because grandfather already has the right to appeal as an "interested party" under K.S.A. 2023 Supp. 59-2401a, since he qualifies as both "[t]he parent" and "the petitioner" in subsections (e)(1) and (e)(7). And it is mistaken because the right to appeal is "entirely statutory," so no other avenue for appeal—including *parens patriae*—exists. See *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

K.S.A. 2023 Supp. 59-2401a(e)(1) provides grandfather a basis to appeal under the "parent" category, as an "alleged father," since he claimed parental rights in the district court. See K.S.A. 2023 Supp. 59-2136(h)(1). This aligns with the Kansas Adoption and Relinquishment Act's recognition of various types of "parents" such as: a "parent whose parental rights have not been terminated," "a prospective adoptive parent," "an adoptive parent," and "a birth parent." K.S.A. 2023 Supp. 59-2112(h)(1)-(3); K.S.A. 59-2118(b). Unlike *T.M.M.H.*, in which the appellate court could not consider a parentage claim that was raised for the first time on appeal and supported by a theory not recognized in Kansas, E.A.'s grandfather properly asserted his parentage claims to the district court under the statutorily based "presumed father" theory. See *In re Adoption of T.M.M.H.*, 307 Kan. at 912-13, 918-19.

Grandfather also achieved "petitioner" status under K.S.A. 2023 Supp. 59-2401a(e)(7) by filing a cross-petition claiming to be E.A.'s de facto adoptive father. While this cross-petition primarily sought a declaration recognizing his existing relationship with the child, it also operates as a separate adoption claim that competes

14

with the one filed by grandmother and her husband. We hold we have jurisdiction over grandfather's appeal.

## STANDING TO INTERVENE

Having considered who may appeal adoption rulings as an "interested party" under K.S.A. 2023 Supp. 59-2401a, we now shift to who may offer evidence during an adoption hearing as a "party in interest" under K.S.A. 2023 Supp. 59-2112(h). See K.S.A. 2023 Supp. 59-2134(a). The statute provides:

"(h) 'party in interest' means:

(1) A parent whose parental rights have not been terminated;

(2) a prospective adoptive parent;

(3) an adoptive parent;

(4) a legal guardian of a child;

(5) an agency having authority to consent to the adoption of a child;

(6) the child sought to be adopted, if over 14 years of age and of sound intellect; or

(7) an adult adoptee." K.S.A. 2023 Supp. 59-2112(h).

*Standard of Review*

Whether a party has standing is usually a legal question, although it can involve factual determinations depending on the stage in the proceedings. Here, both district

15

courts rejected grandfather's standing at the pleading stage where his burden was simply to demonstrate a prima facie case for standing when viewed in the light most favorable to the party asserting standing. See *In re Adoption T.M.M.H.*, 307 Kan. at 915-16.

To address standing based on the stage at which the adoption court ruled as a matter of law, we must accept as true grandfather's allegation that he was the only father figure E.A. knew. See *Board of County Commissioners of Sumner County v. Bremby*, 286 Kan. 745, 751, 189 P.3d 494 (2008) (In a motion to dismiss based on standing, a court must "accept the facts alleged in the petition as true, along with any inferences that can be reasonably drawn therefrom. If those facts and inferences demonstrate that the appellants have standing to sue, the decision of the district court must be reversed."). This purely legal question is subject to de novo review. And the impact of relevant statutes and the agreements with the biological father on grandfather's standing are also legal questions, subject to unlimited review. See *In re Adoption of T.M.M.H.*, 307 Kan. at 908.

*Discussion*

When denying grandfather's motion to intervene, the adoption court reasoned he was not among the enumerated individuals allowed to present evidence, and, as a result, lacked standing to intervene. But this overlooks the appropriate task for this stage of the proceedings. Grandfather needed only to present a prima facie case for standing to meet his burden. And taking his allegations at face value—that he was E.A.'s only father figure—the adoption court prematurely denied him standing.

Grandfather pled sufficient facts supporting his claim that he was a party in interest. He asserted he was E.A.'s father and implied his parental rights had not been terminated. He also claimed he was a de facto or prospective adoptive father by referencing the agreements with E.A.'s biological father. And according to the documents

16

accompanying his pleadings, the biological father, who had temporary sole custody under the 2013 court order, permanently relinquished his parental rights and provided for the transfer of E.A.'s physical custody granting exclusive authority over his medical, educational, and financial decisions to grandfather in 2014.

Accepting these allegations as true, grandfather qualifies as a party in interest under K.S.A. 2023 Supp. 59-2112(h)(1) (parent), (h)(2) (prospective adoptive parent), (h)(3) (adoptive parent), and (h)(4) (legal guardian). Additionally, grandfather appeared and claimed parental rights pursuant to K.S.A. 2023 Supp. 59-2136(h)(1), seeking to establish paternity under K.S.A. 23-2208(a)(4) (notorious recognition). In such a circumstance, the adoption court was obliged to determine parentage before ruling on the adoption petition. As a result, K.S.A. 2023 Supp. 59-2136(h)(1) further grants him standing to intervene.

Viewing the factual allegations in the light most favorable to grandfather, he established a prima facie case for standing. The adoption court should have allowed him to intervene and present evidence in the adoption proceeding and permit full consideration of his paternity claim. Denial of his intervention was premature.

We remand both the parentage and adoption cases to the district court. The parentage case is to be consolidated with the adoption case for further proceedings consistent with this opinion. We vacate the adoption decree and direct the adoption case rewind to its status on May 31, 2019, when the boy was placed in the temporary custody of grandmother and her husband. As such, the remaining appealed issue of *M.F.*'s applicability is moot. This decision comes with the understanding that temporary custody may be subject to reconsideration after remand to determine what is in the boy's best interests given the passage of time in accordance with K.S.A. 59-2131 and K.S.A. 2023 Supp. 59-2132.

17

We further direct that a new senior judge be appointed to hear the consolidated cases on remand to the district court. After the appointment, the new judge may wish to consider a guardian ad litem appointment under K.S.A. 23-2219(b).

Finally, we address the adoption panel's concerns "about the events surrounding the filing of the [adoption] petition" by grandmother and her husband that led it to ask the district court on remand "to make further inquiry on whether there was a fraud committed here." *In re Adoption of E.A.*, 2024 WL 1476802, at *11. We share those concerns, but rather than direct such an inquiry as the panel's language suggests, we leave it to the district court's sound discretion as the proceedings continue.

Judgment of the Court of Appeals in No. 123,710 affirming the district court is reversed. Judgment of the district court in that case is reversed and the case is remanded with directions. Judgment of the Court of Appeals in No. 125,994 reversing the district court is affirmed. Judgment of the district court in that case is reversed, the adoption decree is vacated, and the case is remanded with directions.

WILSON, J., not participating.

\* \* \*

STEGALL, J, concurring in part and dissenting in part: I concur with the majority that grandfather had interested party status in the adoption case under K.S.A. 2023 Supp. 59-2112(h)(2) and (h)(4) as both a prospective adoptive parent and as a legal guardian. He therefore had standing and should have been permitted to intervene in that case. I disagree, however, with the conclusion that grandfather had interested party status under either subsections (h)(1) or (h)(3) as a parent or an adoptive parent.

18

I will not belabor here my longstanding disagreement with our interpretation of the Kansas Parentage Act. "Under Kansas law, biology and adoption are the only two ways a parent-child relationship can be forged. . . . The [Kansas Parentage Act, K.S.A. 23-2201 et seq.] succeeds in creating a coherent whole by ending where it begins—that in Kansas, the exclusive routes to parenthood are biology and adoption." *In re Adoption of T.M.M.H.*, 307 Kan. 902, 927, 930, 416 P.3d 999 (2018) (Stegall, J., concurring in result and dissenting). Here, the record is clear that grandfather cannot be E.A.'s biological father in fact or via a legal presumption. The record also establishes that grandfather is not currently an adoptive parent.

The majority's analysis of grandfather's status as an "alleged father" under K.S.A. 2023 Supp. 59-2112(h)(1) continues to display a misguided interpretation of the Kansas Parentage Act and the Kansas Adoption and Relinquishment Act by beginning and ending with the observation that grandfather "asserted he was E.A.'s father." 319 Kan. ___, slip op. at 16. I recently predicted that the majority's approach to these issues would lead to cases such as this where "people in Grandparents' situation (and the attorneys who represent them) will simply assert loudly and often that, yes, they are also legal parents of the child in question." *In re L.L.*, 315 Kan. 386, 398, 508 P.3d 1278 (2022) (Stegall, J., concurring). Today's decision only endorses this practice of "'saying it makes it so.'" *In re W.L.*, 312 Kan. 367, 386, 475 P.3d 338 (2020) (Stegall, J., dissenting).

I have written extensively on these problems in this now long line of cases. See *In re Parentage of R.R.*, 317 Kan. 691, 711, 538 P.3d 838 (2023) (Stegall, J., dissenting); *In re L.L.*, 315 Kan. at 398; *In re M.F.*, 312 Kan. 322, 353, 475 P.3d 642 (2020) (Stegall, J., dissenting); *In re W.L.*, 312 Kan. at 385 (Stegall, J., dissenting); *In re Adoption of Baby Girl G.*, 311 Kan. 798, 808, 466 P.3d 1207 (2020) (Stegall, J., dissenting); *In re Adoption of T.M.M.H.*, 307 Kan. at 927 (Stegall, J., concurring in result and dissenting). Consistent

19

with my prior opinions, I dissent from the portion of today's decision concerning both the underlying paternity action and grandfather's interested party status in the adoption action under K.S.A. 2023 Supp. 59-2112(h)(1) and (h)(3).