IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,491

STATE OF KANSAS,
*Appellee*,

v.

ROBERT CAMERON GRANT,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 21-5510 expressly incorporates by reference the Romeo and Juliet statutes, K.S.A. 21-5610 and K.S.A. 21-5611. Before applying K.S.A. 21-5510 to a defendant under the age of 19, a court must first determine whether the charged conduct falls within the scope of K.S.A. 21-5610 or K.S.A. 21-5611. If so, the State may only charge the defendant under the Romeo and Juliet statutes.

2.

The term "sexually explicit conduct" in the Romeo and Juliet statutes, K.S.A. 21-5610 and K.S.A. 21-5611, is defined exclusively by K.S.A. 21-5611(g)(1) and does not include mere nudity. Courts err when they apply the broader definition of "sexually explicit conduct" found in K.S.A. 21-5510(d)(1) to determine the applicability of the Romeo and Juliet statutes.

3.

A court assessing a defendant's claim of ineffective assistance during plea negotiations must consider defense counsel's performance in light of all original charges—not merely the charges to which the defendant ultimately pled guilty.

1

4.

In evaluating whether the Romeo and Juliet statutes apply, a court must not conflate the separate statutory exceptions for "sexually explicit conduct" and "obscenity." These are independent grounds for disqualification and must be analyzed under their distinct statutory definitions.

5.

Obscenity under K.S.A. 21-6401(f)(1) is established only if all three statutory elements are met: (A) appeal to the prurient interest, (B) patently offensive representations or descriptions of specified sexual conduct, and (C) lack of serious literary, educational, artistic, political, or scientific value. A finding of obscenity requires resolution of factual questions that must be determined by the trier of fact.

6.

An appellate court exceeds its role when it makes factual determinations—such as whether images are obscene or appeal to the prurient interest—in the absence of a developed record. These determinations must be made by a fact-finder at an evidentiary hearing.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 13, 2024. Appeal from Sedgwick District Court; TYLER J. ROUSH, judge. Oral argument held May 15, 2025. Opinion filed July 25, 2025. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Jacob Nowak*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

2

*Kristi D. Allen*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  Robert Cameron Grant pled guilty to two counts of attempted sexual exploitation of a child under K.S.A. 21-5510(a)(4) after police found nude images and videos of his 16-year-old girlfriend on his two cell phones. Grant was 18 years old at the time. Following sentencing, Grant moved to withdraw his plea, arguing his counsel failed to identify and discuss with him the statutory "Romeo and Juliet" exceptions to K.S.A. 21-5510 related to teen sexting. The district court summarily denied the motion without a hearing or argument. Grant appealed and a divided Court of Appeals panel affirmed. Because Grant's motion raises a substantial question of fact, we reverse the decisions of the district court and the Court of Appeals and remand to the district court to conduct an evidentiary hearing on Grant's motion to withdraw plea.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2021, the State charged Grant with 21 crimes in three criminal cases, including nine counts of sexual exploitation of a child under K.S.A. 21-5510(a)(2) and five counts of sexual exploitation of a child under K.S.A. 21-5510(a)(4). According to the amended probable cause affidavit, the sex crime charges stem from nude photographs and videos of Grant's then 16-year-old girlfriend, J.S., found on his cell phones. Grant was 18 years old at the time these crimes were alleged to have occurred. The other charges, which are not relevant to this appeal, include violation of a protection order, criminal trespass, and interference with a law enforcement officer.

3

Under a global plea agreement for all three criminal cases, Grant pled guilty to two counts of *attempted* sexual exploitation of a child under K.S.A. 21-5510(a)(4). The State then filed a second amended information that changed two counts of sexual exploitation of a child under K.S.A. 21-5510(a)(4) to attempted crimes alleging Grant "asked JS to send him videos of her bare breasts." The court sentenced him to 76 months in prison.

Six months later, Grant filed a pro se motion to withdraw plea, arguing withdrawal was necessary to correct a manifest injustice based on all three factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), because counsel failed to inform Grant of the exception to K.S.A. 21-5510 found in K.S.A. 21-5610(f). Grant asserted he would not have entered a plea agreement if he had been properly informed. The district court denied Grant's motion without a hearing, and Grant appealed.

A majority of a Court of Appeals panel affirmed the district court, concluding the statutory exceptions in K.S.A. 21-5610 and K.S.A. 21-5611 did not apply to attempted exploitation of a child under K.S.A. 21-5510(a)(4). *State v. Grant*, No. 126,491, 2024 WL 4182299, at *4 (Kan. App. 2024) (unpublished opinion). Judge Schroeder dissented, suggesting the Romeo and Juliet statutes "have potential application" to Grant's case and criticizing the majority for not considering counsel's performance leading up to the plea agreement. *Grant,* 2024 WL 4182299, at *4-5 (Schroeder, J., dissenting). Judge Schroeder also pointed out that the case involved a question of fact regarding whether counsel informed Grant about these exceptions. *Grant,* 2024 WL 4182299, at *4-5 (Schroeder, J., dissenting).

Grant moved for rehearing or modification with the Court of Appeals, which the court denied. We granted his petition for review.

ANALYSIS

Whether Grant can ultimately prevail on his motion to withdraw plea after sentencing depends on whether he can show that counsel's failure to investigate and inform him about applicable statutory exceptions to K.S.A. 21-5510 results in manifest injustice. But because the district court summarily denied Grant's motion, the only issue before us is whether the court should have held an evidentiary hearing to consider the claims in his motion.

*Standard of review*

We have unlimited review over a district court's decision to deny a postsentence motion to withdraw plea when the motion is summarily denied without an evidentiary hearing or argument. *State v. Wilson*, 308 Kan. 516, 520, 421 P.3d 742 (2018) (quoting *State v. Fritz*, 299 Kan. 153, 154-55, 321 P.3d 763 [2014]). The same standard of review applies to our interpretation of statutes. *In re E.A.*, 319 Kan. 748, 757, 560 P.3d 1149 (2024).

*Standard of proof*

After sentencing, a district court may grant a motion to withdraw plea to correct manifest injustice. K.S.A. 22-3210(d)(2). "Courts generally consider three factors in assessing whether the movant has established manifest injustice: '"(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made."'" *State v. Espinoza*, 319 Kan. 653, 658-59, 556 P.3d 882 (2024). The movant bears the burden of showing manifest injustice. *State v. Huynh,* 278 Kan. 99, 101, 92 P.3d 571 (2004).

If a defendant alleges manifest injustice based on competency of counsel under the first factor, then the defendant must meet the ineffective assistance of counsel standard set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This standard requires the defendant to show that (1) counsel's performance "'fell below an objective standard of reasonableness'" and (2) prejudice, meaning "'there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different.'" *Espinoza*, 319 Kan. at 659 (quoting *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 [2014]).

In assessing whether counsel's performance fell below an objective standard of reasonableness, "there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly*, 298 Kan. at 970 (quoting *Chamberlain v. State*, 236 Kan. 650, 655, 694 P.2d 468 [1985]). But counsel falls below an objective standard of reasonableness if they fail to investigate and discover applicable defenses. *State v. Dinkel*, 314 Kan. 146, 152, 495 P.3d 402 (2021).

In the context of ineffective assistance of counsel leading to a plea agreement, "prejudice means a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea." *Kelly*, 298 Kan. at 970; see also *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Kelly*, 298 Kan. at 970 (quoting *Chamberlain,* 236 Kan. at 657).

A district court must hold an evidentiary hearing on the postsentence motion to withdraw a plea if the motion "raises substantial issues of fact or law." *Espinoza*, 319 Kan. at 659 (quoting *State v. Jackson*, 255 Kan. 455, 459, 874 P.2d 1138 [1994]); see

6

also *Kelly*, 298 Kan. at 975 ("As noted above, a movant is not entitled to an evidentiary hearing on a postsentence plea withdrawal motion unless that motion raises substantial issues of fact or law."). The movant "bears the burden of alleging facts adequate to warrant a hearing." *Kelly*, 298 Kan. at 969.

Given the standards set forth above, the questions presented are whether Grant (1) raised substantial issues of fact or law that, if true, show that counsel's failure to investigate and inform Grant of applicable exceptions fell below an objective standard of reasonableness and (2) alleged a reasonable probability that, but for counsel's deficient performance, he would have rejected the plea and gone to trial. To answer these questions, we begin by reviewing the statutory framework upon which the State's charges against Grant are based.

*Sexual exploitation of a child—the statutory framework*

Grant's case involves several laws that work together to protect children from sexual exploitation. The main law, K.S.A. 21-5510, makes it a *felony* to possess sexual images of children or promote the performance of sexually explicit conduct by children. K.S.A. 21-5510(b). Here, the State charged Grant with violations of K.S.A. 21-5510(a)(2) and (a)(4).

> "(a) *Except as provided in K.S.A. 21-5610 and 21-5611*, and amendments thereto, sexual exploitation of a child is:
>
> . . . .
>
> (2) possessing any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the

7

sexual desires or appeal to the prurient interest of the offender or any other person;

. . . .

(4) promoting any performance that includes sexually explicit conduct by a child under 18 years of age, or a person whom the offender believes to be a child under 18 years of age, knowing the character and content of the performance." (Emphasis added.) K.S.A. 21-5510(a).

As the italicized language reflects, the statute expressly states at the outset that K.S.A. 21-5510 does *not* apply if the conduct falls under either K.S.A. 21-5610 or K.S.A. 21-5611, commonly referred to as the Romeo and Juliet statutes. These statutes generally make it a *misdemeanor* (on a first offense) for an offender under 19 to possess or transmit nude images of a child. The Romeo and Juliet statutes themselves, however, contain several exceptions which prevent their application. Even so, in any case charging a defendant under the age of 19 with a violation of K.S.A. 21-5510, the court must first determine whether the conduct falls under K.S.A. 21-5610 or 21-5611 before applying the more serious child exploitation statute, K.S.A. 21-5510.

Because Grant's case turns on whether the Romeo and Juliet statutes apply to the crimes charged by the State, we review these statutes and their exceptions in detail.

*Romeo and Juliet statutes—the statutory framework*

The Romeo and Juliet statutes became law in 2016. L. 2016, ch. 96, §§ 1, 2. Both reduce the punishment in certain factual situations when an offender under the age of 19 is involved in teenage sexting. See K.S.A. 21-5610; K.S.A. 21-5611.

8

K.S.A. 21-5610 makes it a misdemeanor if a defendant under the age of 19 knowingly possesses "a visual depiction of a child 12 years of age or older but less than 16 years of age in a state of nudity" and the defendant "received such visual depiction directly and exclusively from the child who is the subject of such visual depiction." K.S.A. 21-5610(a), (b). But this statute specifically provides that a person does *not* commit a crime if they are under 19 and possess "a visual depiction of a child in a state of nudity *who is 16 years of age or older*." (Emphasis added.) K.S.A. 21-5610(f). In this way, the statute provides a sliding scale of culpability for a defendant under 19 based on the age of the child depicted.

The other Romeo and Juliet statute, K.S.A. 21-5611, criminalizes "knowingly *transmitting* a visual depiction of a child 12 or more years of age but less than 18 years of age in a state of nudity when the offender is less than 19 years of age." (Emphasis added.) K.S.A. 21-5611(a). The term "transmission" is "any form of communication" and includes "a request to receive a transmission of a visual depiction." K.S.A. 21-5611(g)(3). A defendant's first violation of this subsection of the statute is a misdemeanor but a second violation is a felony. K.S.A. 21-5611(c)(1). K.S.A. 21-5611 also includes an aggravated version of the crime if the defendant's conduct meets certain criteria. K.S.A. 21-5611(b). A conviction for aggravated transmission is a felony. K.S.A. 21-5611(c)(2).

As mentioned above, the Romeo and Juliet statutes contain exceptions. Relevant here, K.S.A. 21-5610 and K.S.A. 21-5611 do not apply—and a prosecutor may properly charge the conduct under the more serious child exploitation statute K.S.A. 21-5510—if the nude picture transmitted or possessed

- depicts a child engaged in sexually explicit conduct as defined in K.S.A. 21-5611(g)(1), or

9

- constitutes obscenity as defined in K.S.A. 21-6401(f)(1). K.S.A. 21-5610(e); K.S.A. 21-5611(f).

Having clarified the portions and operation of the statutory scheme relevant to Grant's case, we are ready to review the decisions of the district court and Court of Appeals.

*The district court's analysis is flawed.*

Grant's pro se motion to withdraw plea alleged defense counsel never informed him of the statutory exception found in one of the Romeo and Juliet statutes, K.S.A. 21-5610(f), which provides that a person does *not* commit a crime if they are under 19 and possess "a visual depiction of a child in a state of nudity who is 16 years of age or older." Without holding a hearing, the district court summarily denied the motion in a one-page written order. In support of its decision, the court explained that the sexual exploitation of a child statute, K.S.A. 21-5510, defined "sexually explicit conduct" to include "conduct beyond mere nudity." The court held the Romeo and Juliet statute, K.S.A. 21-5610(f), did not apply to Grant because the statutory language of the crimes of conviction—attempted sexual exploitation of a child under K.S.A. 21-5510(a)(4)—"includes sexually explicit conduct, which encompasses conduct beyond mere nudity." Since K.S.A. 21-5610(f) only applies to nude photographs, the court concluded the exception did not apply since Grant was convicted of a crime involving "photos of a minor engaged in sexually explicit conduct." The district court committed two errors in its analysis.

1. *The court applied the wrong definition of "sexually explicit conduct."*

First, the district court erred by applying the definition of "sexually explicit conduct" set forth in K.S.A. 21-5510 when it should have applied the definition of

10

"sexually explicit conduct" set forth in the Romeo and Juliet statute. As noted above, the Romeo and Juliet statutes apply unless, among other things, the content in question is "a visual depiction of a child engaged in sexually explicit conduct." K.S.A. 21-5610(e); K.S.A. 21-5611(f). To that end, K.S.A. 21-5611(g)(1) defines "sexually explicit conduct" as used in K.S.A. 21-5610 and K.S.A. 21-5611 as "actual or simulated: Sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex; masturbation and sado-masochistic abuse for the purpose of sexual stimulation."

Notably, this definition, which again applies to *both* Romeo and Juliet statutes, is much narrower than the "sexually explicit conduct" definition found in the sexual exploitation of a child statute at K.S.A. 21-5510(d)(1) ("sexually explicit conduct" also includes "[e]xhibition in the nude" and "lewd exhibition of the genitals, female breasts or pubic area of any person"). The difference in definitions is critical:  if the "sexually explicit conduct" exception to the Romeo and Juliet statutes included nude images, then the purpose of the Romeo and Juliet statutes—to reduce the punishment when young persons in the relevant age ranges consensually transmit nude images—would be frustrated, and the exception would swallow the whole.

In sum, the district court should have initially looked at the prefatory language of K.S.A. 21-5510(a), noticed that this statute expressly subjects its application to the Romeo and Juliet statutes, and then considered whether the statutory definition of "sexually explicit conduct" in *those statutes* prevented the application of the exception in K.S.A. 21-5610(f). And that definition, found in K.S.A. 21-5611(g)(1), does *not* define nude photos as "sexually explicit conduct." Under the Romeo and Juliet exceptions that Grant asserts apply to his case, nude photos are not "sexually explicit conduct."

11

## 2. *The court improperly limited its assessment of counsel's performance.*

The district court's second error was limiting its assessment of defense counsel's performance to just those offenses to which Grant ultimately pled guilty—two counts of attempted sexual exploitation of a child based on his request that J.S. send him videos of her bare breasts—rather than evaluating counsel's performance in light of the full scope of the original charges. Grant's ineffective assistance claim requires assessing counsel's performance during the plea negotiation process, from the time of the initial charges to the entry of the plea. See *State v. White*, 289 Kan. 279, Syl. ¶ 5, 211 P.3d 805 (2009) (In order to provide reasonable representation to a defendant in plea negotiations, "defense counsel has an obligation to advise the defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant."); *Chamberlain,* 236 Kan. at 654 (The "critical inquiry" for determining whether an attorney's representation was ineffective is "whether counsel's assistance was reasonable considering all the circumstances."); *Morrow v. State*, 219 Kan. 442, 446, 548 P.2d 727 (1976) (In the context of plea negotiations, defense counsel has a duty to be familiar with the relevant law, understand its application to the client's case, and consider all available alternatives and their consequences.).

Before pleading guilty, Grant faced 14 sex crime charges. In reviewing Grant's motion to withdraw, the court should have considered whether the Romeo and Juliet exceptions applied to *those original charges*, and whether competent counsel would have identified and explained those exceptions to his client. Grant claimed in his motion that he would have rejected the plea had he known about the statutory protections. The district court therefore erred by considering the applicability of K.S.A. 21-5610(f) to the crime of attempted sexual exploitation of a child under K.S.A. 21-5510(a)(4), rather than to the original nine charges under K.S.A. 21-5510(a)(2) and the five charges under K.S.A. 21-5510(a)(4).

12

*The Court of Appeals' analysis is flawed*

The panel majority concluded the district court did not err in denying Grant's pro se motion to withdraw plea because, as a matter of law, the Romeo and Juliet statutes do not "apply to the charge of attempted exploitation of a child under K.S.A. 21-5510(a)(4)." *Grant*, 2024 WL 4182299, at *4. Like the district court, the panel first erred by focusing on whether the Romeo and Juliet statutes applied to the crimes Grant pled guilty to, rather than conducting a full analysis of whether the Romeo and Juliet statutes would have provided exceptions to the 14 counts of sexual exploitation of a child Grant faced as he considered whether to accept the plea agreement. As Judge Schroeder properly noted, "[w]hat should be considered is whether counsel's performance in its entirety was reasonable—in other words, the relevant body of conduct leading up to Grant's decision to accept a plea agreement and enter his pleas under the terms of the agreement." *Grant*, 2024 WL 4182299, at *5 (Schroeder, J., dissenting).

Second, unlike the district court, which incorrectly analyzed the "sexually explicit conduct" exception, the panel rejected Grant's request for an evidentiary hearing by incorrectly analyzing the "obscenity" exception to the Romeo and Juliet statutes. Neither K.S.A. 21-5610 nor K.S.A. 21-5611 apply when the content is "a visual depiction of a child engaged in sexually explicit conduct *or a visual depiction that constitutes obscenity as defined in K.S.A. 21-6401(f)(1), and amendments thereto*." (Emphasis added.) K.S.A. 21-5610(e); K.S.A. 21-5611(f).

K.S.A. 21-6401(f)(1) defines "obscene" as follows:

"(1) Any material or performance is 'obscene' if:

13

(A) The average person applying contemporary community standards would find that the material or performance, taken as a whole, appeals to the prurient interest;

(B) the average person applying contemporary community standards would find that the material or performance has patently offensive representations or descriptions of:

    (i)      Ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse or sodomy; or

    (ii)      masturbation, excretory functions, sadomasochistic abuse or lewd exhibition of the genitals; *and*

(C) taken as a whole, a reasonable person would find that the material or performance lacks serious literary, educational, artistic, political or scientific value[.]" (Emphasis added.) K.S.A. 21-6401(f).

Critically, only material that meets the requirements of subsections (A), (B), *and* (C) qualifies as "obscene." See *In re Estate of Butler*, 301 Kan. 385, 394, 343 P.3d 85 (2015) ("When a statute's language is plain and unambiguous, we interpret it and apply it as drafted by the legislature and do not indulge in statutory construction."). The term "and" at the end of K.S.A. 21-6401(f)(1)(B)(ii) functions as a conjunctive combining the subsections. See *State v. Manbeck*, 277 Kan. 224, 228-29, 83 P.3d 190 (2004); Scalia & Garner, Reading Law: The Interpretation of Legal Texts, p. 116 (2012) ("The conjunctions *and* and *or* are two of the elemental words in the English language. Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives."). Thus, material is only obscene if the average person would find the material

14

1. appeals to the prurient interest; *and*

2. has patently offensive representations or descriptions of ultimate sexual acts, masturbation, excretory functions, sadomasochism abuse, or lewd exhibition of genitals; *and*

3. lacks serious literary, educational, artistic, political, or scientific value. K.S.A. 21-6401(f)(1).

This reading comports with the United States Supreme Court's obscenity test announced in *Miller v. California*, 413 U.S. 15, 23-24, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973). See Lonergan, *Obscenity and Book Banning: Properly Defining "Pervasively Vulgar"*, 34 Geo. Mason U. Civ. Rts. L.J. 293, 296-303 (2024) (explaining the history of the obscenity doctrine); *State v. Hughes*, 246 Kan. 607, 617-18, 792 P.2d 1023 (1990) (recognizing the *Miller* standards); *State v. Motion Picture Entitled "The Bet"*, 219 Kan. 64, 547 P.2d 760 (1976) (considering the constitutionality of an earlier version of the Kansas obscenity statute and discussing *Miller*).

In *Miller,* the Court reiterated that the First Amendment to the United States Constitution does not protect material defined as obscene. 413 U.S. at 23. State statutes regulating "obscene materials must be carefully limited" and the "scope of such regulation" must be confined "to works which depict or describe sexual conduct." 413 U.S. at 23-24. And these statutes must specifically define the proscribed conduct. 413 U.S. at 24. The Court outlined a three-part test for obscenity:

> "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, [citations omitted] (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24.

15

As for the second prong, the Court provided "a few plain examples of what a state statute could define for regulation under part (b)." 413 U.S. at 25. These examples resemble the language in K.S.A. 21-6401(f)(1)(B)(i)-(ii), further suggesting an association between our obscenity statute and the *Miller* test. Compare *Miller*, 413 U.S. at 25, with K.S.A. 21-6401(f)(1)(B)(i)-(ii). Importantly, only a fact-finder may decide whether material is obscene. See *Miller*, 413 U.S. at 24 (noting the three-prong test was "[t]he basic guidelines for the trier of fact"); *State v. Starr Enterprises, Inc.*, 226 Kan. 288, 293, 527 P.2d 1098 (1979) ("The trier of fact is to judge the film as a whole in determining whether or not it is obscene."); 67 C.J.S., Obscenity § 25 ("Thus, the issues of whether the allegedly obscene material appeals to the prurient interest in sex, in view of contemporary community standards, and is patently offensive and whether the material lacks literary, artistic, political, or scientific value ordinarily are for the trier of fact to resolve.").

Having outlined the correct application of the obscenity exception in the Romeo and Juliet statutes, we now turn to the panel's analysis. The panel appropriately cited K.S.A. 21-5611(g)(1) as the definition of "sexually explicit conduct" but then the panel conflated the "obscene" material and "sexually explicit conduct" exceptions. Specifically, it stated that "[o]bscene material . . . includes the same items as listed under K.S.A. 21-5611(g) [Romeo and Juliet definition of "sexually explicit conduct"], but also includes any material or performance that an average person would find as appealing to 'the prurient interest.'" Based on this improper conflation, the panel concluded that the Romeo and Juliet statutes "expressly do not encompass visual depictions of the child engaged in sexually explicit conduct which would include any depiction that the average person would find as appealing to the prurient interest." *Grant*, 2024 WL 4182299, at *2-3.

16

The panel's analysis is flawed in several respects. First, the panel improperly combined elements of two separate statutory exceptions—obscenity and "sexually explicit conduct"—treating them as if they were a single, unified standard. This misreads the statutes, which identify these as independent exceptions, each with distinct criteria. See K.S.A. 21-5610(e); K.S.A. 21-5611(f); *State v. Bee*, 288 Kan. 733, 741, 207 P.3d 244 (2009) ("The word 'or' is generally to be read as a disjunctive rather than a conjunctive."). By blending them, the panel created a new, unsupported rule contrary to the plain language of the statute.

Second, the panel improperly focused solely on whether the material appealed to a "prurient interest" to determine obscenity. But under Kansas law, prurient interest is only one part of a multi-pronged test for obscenity. The fact-finder must also conclude that the materials are patently offensive representations or descriptions of ultimate sexual acts, masturbation, excretory functions, sadomasochism, or lewd genital displays and lack "serious literary, educational, artistic, political or scientific value[.]" K.S.A. 21-6401(f)(1). By relying only on the prurient interest prong, the panel effectively expanded the scope of the obscenity exception beyond its statutory bounds. This interpretation renders the Romeo and Juliet statutes toothless, as it excludes from protection many sexual images the Legislature plainly intended to cover and runs counter to the statutes' purpose: to allow certain consensual teen sexting while still prohibiting clearly harmful content.

Finally, the panel improperly assumed a fact-finding role when it decided the record was sufficient to find the images in question appealed to the prurient interest. See *Sall v. T's, Inc.*, 281 Kan. 1355, 1362, 136 P.3d 471 (2006) ("The Court of Appeals sits not as a finder of fact but as an appellate court."). Although the record does not contain the images and videos on Grant's phones, the panel implicitly made a factual finding that the digital media appealed to the prurient interest. *Grant*, 2024 WL 4182299, at *3. But

17

only a fact-finder may make this determination; thus, the panel erred by exceeding the limitations of appellate review.

*Grant should have received a hearing based on the record before us.*

Both the district court and the panel concluded, as a matter of law, that the Romeo and Juliet statutes did not apply to Grant's case. But as explained above, these legal conclusions were based on a flawed interpretation of the applicable statutes. We must therefore consider whether, based on the current record, the Romeo and Juliet defenses could have applied to the charges against Grant.

Unfortunately, the record is sparse. Grant waived his preliminary hearing, the images and videos were not introduced into evidence, and the plea hearing revealed little beyond general statutory references. The most specific source is the confidential probable cause affidavit, which merely notes that law enforcement recovered three videos and several nude images of J.S. on Grant's phones. Grant also appears in some of the videos and images.

Despite this limited record, the Romeo and Juliet statutes may apply for several reasons. We organize the analysis in two parts: first, addressing the initial charges filed against Grant; and second, addressing the charges to which he ultimately pled guilty.

1. *Initial charges against Grant*

Grant faced nine charges under K.S.A. 21-5510(a)(2) for possessing nude images of J.S. But because Grant was 18 years old when he was charged and J.S. appears to have been 16, his possession of the images may not be criminal at all. See K.S.A. 21-5610(f) ("It shall not be unlawful for a person who is less than 19 years of age to possess a visual

18

depiction of a child in a state of nudity who is 16 years of age or older."). And even if J.S. was 15 years old when the photos were taken, then Grant's conduct may still be covered by K.S.A. 21-5610(a), which reclassifies such possession as a misdemeanor rather than a felony under the sexual exploitation of a child statute. See *State v. Qualls*, No. 126,205, 2024 WL 4182572, at *3 (Kan. App. 2024) (unpublished opinion) ("The language [of K.S.A. 21-5510(a)(2)] fairly obviously refers to the age of the child as they are depicted in the image and not at some later time when the particular defendant may have come into possession of the image."). Thus, K.S.A. 21-5610 potentially applied to reduce or eliminate criminal liability for these charges.

Grant also faced five charges under K.S.A. 21-5510(a)(4) for "promoting" a performance of a minor including sexually explicit conduct. The statute broadly defines "promoting" to include transmitting, distributing, exhibiting, or similar actions. K.S.A. 21-5510(d)(2). But the record is unclear whether Grant actually promoted any images or videos. According to Grant, J.S. either sent him unsolicited images or used his phone to take photos or videos herself. Without additional evidence to support the State's theory of promotion, this charge may not be supported by the facts—and K.S.A. 21-5611 may apply to bar or reduce liability.

2. *Charges to which Grant ultimately pled guilty*

Grant ultimately pled guilty to two counts of attempted sexual exploitation under K.S.A. 21-5510(a)(4) for allegedly asking J.S. to send videos of her bare breasts. But this conduct likely falls within the scope of K.S.A. 21-5611, which applies when a person under 19 knowingly transmits a visual depiction of a minor in a state of nudity. Notably, "transmitting" includes requesting such an image, and "nudity" includes partial exposure of the female breast. If this Romeo and Juliet statute applies, Grant's conduct may be treated as a misdemeanor, not a felony, if it is a first offense. See K.S.A. 21-5611(c)(1).

19

Taken together, these three theories of liability—possession, promotion, and solicitation—show that the Romeo and Juliet statutes may have applied to Grant's conduct and potentially reduced or eliminated his felony liability. Yet even if Grant's conduct generally falls within the scope of these statutes, their protections are not absolute. Two statutory exceptions—obscenity and sexually explicit conduct—can still disqualify a defendant from relief under the Romeo and Juliet provisions. Whether these exceptions apply is a separate and fact-dependent inquiry.

But again, the limited record here impedes our ability to conduct this factual inquiry. The affidavit does not show whether the images or videos depict acts like sexual intercourse, which would trigger the "sexually explicit conduct" exception under K.S.A. 21-5611(g)(1). Similarly, the obscenity exception under K.S.A. 21-6401(f) cannot be applied without a fact-finder determining whether the images and videos appeal to the prurient interest, depict certain conduct, and lack serious value. These are factual questions that must be resolved at an evidentiary hearing—not by an appellate court.

In sum, the Romeo and Juliet statutes may apply to both the initial and final charges against Grant. His claim that counsel failed to inform him of these exceptions could support the finding of manifest injustice due to ineffective assistance. While we do not decide whether the statutes ultimately apply, the possibility is sufficient to require an evidentiary hearing to determine whether Grant should be allowed to withdraw his plea.

*Conclusion*

We reverse the district court and the Court of Appeals panel and remand to the district court to conduct an evidentiary hearing on the merits of Grant's motion to withdraw his plea.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

WILSON, J., not participating.